# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BRUCE WAYNE GLENN, | ) | Case No. 04-47566 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| SPENCER R. THOMSON and | ) | |
| MATTHEW D. THOMSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Adv. No. 05-4048 |
| | ) | |
| BRUCE WAYNE GLENN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

On March 11, 2005, Spencer R. Thomson and Matthew D. Thomson ("Plaintiffs") filed an adversary complaint ("Complaint") against the Debtor, Bruce Wayne Glenn, seeking the denial of his discharge under 11 U.S.C. § 727(a)(2), (4), and (5). The Complaint alleged several factual bases for the relief requested, but at trial the Plaintiffs focused solely on the Debtor's failure to disclose his interest in more than $10,000 in income "bonuses" he received within several months after he filed his bankruptcy petition and his failure to adequately explain the dissipation of those funds. The Plaintiffs contend, and the Debtor admits, that the lion's share of the bonuses constitutes property of the estate because the bonuses are largely attributable to work performed prepetition. Having made that admission, the Debtor's only defenses to this action are his assertion that he didn't disclose the bonuses because it was uncertain whether he would receive them and his unsubstantiated claim that he spent the bonuses on attorneys' fees and on expenses related to his children.

The trial on this matter was held on September 2, 2005. Both parties offered testimony and argument in support of their respective positions, and the Court took the matter under advisement at the conclusion of the hearing. The Court is now prepared to rule.

### BACKGROUND

Despite the breadth of the allegations in the Complaint, the scope of relevant facts in this matter

turns out to be quite narrow as a result of the Plaintiffs' decision to narrow the focus of its Complaint and the Debtor's admissions at trial that the bonuses are (partially) property of the estate and that the Plaintiffs have standing to bring this adversary proceeding. Only the following facts are germane to the Court's decision:

The Debtor has been employed in various capacities by Fiorella's Jack Stack BBQ[1] since February 2002. On March 3, 2003, he entered into an agreement ("Agreement") with Jack Stack to serve as general manager of the Martin City location. Under the Agreement, the Debtor was entitled to a base salary of $1,050 per week (later increased to $1,125) and three performance-based bonuses: (1) a "Quarterly Bonus," which (as one would expect) is paid quarterly and earned by increasing monthly net sales, reducing monthly labor costs, and reducing the monthly cost of goods; (2) a "Four Percent Operating Bonus," which consists of four percent of the Martin City location's operating profit; and (3) a semiannual bonus equal to 16% of the actual, annualized operating profit in excess of the budgeted operating profit for a given year. Bonuses attributable to a particular period are paid 30 to 60 days after the end of that period. Thus, bonuses for the last period in a year are routinely paid in the following calendar (and fiscal) year.[2] To receive a bonus, the Debtor must be employed by Jack Stack on the day the bonuses are distributed. Pursuant to an automatic renewal clause, the Debtor continues to be employed under the Agreement.

Since the Debtor took the position of general manager in 2003, the Quarterly Bonus and Four Percent Operating Bonus have accounted for a substantial portion of the his. In 2003, the Debtor received $16,038.66, or 22.9 % of his gross income ($69,763.66), from bonuses. In 2004, as of the date the Debtor filed bankruptcy (December 7, 2004), the Debtor had received $19,230.08, or 26% of his gross income ($73,905.08), from bonuses. And that percentage increases to 28% if the $4,210.43 bonus received by the Debtor between December 7 and December 31 is included in the calculation. Moreover, as of March 23, 2005, the Debtor received an additional $7,721.90 in bonuses attributable primarily to his prepetition employment in 2004. None of these bonuses, received or anticipated, was disclosed on the Debtor's schedules.

The only income disclosed by the Debtor on "Schedule I – Current Income of Individual Debtor"

---

[1] For purposes of this Opinion, the specific entity within the Fiorella's Jack Stack BBQ corporate structure that employs the Debtor is not important, although the Court now understands that each location is an independent corporate entity operating under the "Ja-Dell Corp." corporate umbrella and that for the relevant time period the Debtor worked at the Jack Stack Martin City location. For convenience sake, the Court will simply refer to "Jack Stack."

[2] The Jack Stack fiscal year ends on December 26.

2

is a gross monthly income of $4,875.00. Annualized, this figure equals $58,500 and translates into a gross weekly salary of $1,125 – the base salary he received under the Agreement with Jack Stack. There are no other indications of income on Schedule I other than the Debtor's base salary. The Debtor did not include the $19,230.08 in bonuses received earlier in 2004 as prorated gross monthly income, despite the instructions on the official form to do so, nor did he avail himself of the opportunity at the bottom of Schedule I to, as the form instructs, "[d]escribe any increase of more than 10% in any of the above categories anticipated to occur within the year following the filing of this document." In contrast, the Debtor disclosed in his Statement of Financial Affairs that his income in 2004 as of the date of filing was $72,780.08, and in an exhibit to a Separation and Property Settlement Agreement dated February 28, 2005, and filed in his divorce proceedings the Debtor stated that his gross yearly income is approximately $75,000.

## DISCUSSION

The Plaintiffs seek a denial of the Debtor's discharge under 11 U.S.C. § 727(a)(2), (4), and (a)(5). For the reasons set forth below, the Court finds that the Debtor's discharge should be denied under § 727(a)(4) and (a)(5). The evidence adduced at trial is insufficient to maintain a claim under § 727(a)(2).

**11 U.S.C. § 727(a)(4)**

Section 727(a)(4) provides that a debtor is not entitled to a discharge if he knowingly and fraudulently, in or in connection with the case, makes a false oath or account.[3] For purposes of § 727(a)(4), a "false oath" includes an intentional, material omission from a debtor's schedules.[4] Because a debtor will rarely admit his fraudulent intent, his actual intent can be proven by circumstantial evidence.[5]

In this case, the preponderance of the evidence supports a finding that the Debtor's failure to disclose his bonus income on his Statement of Current Income (Schedule I) constitutes an intentional, material omission warranting the denial of his discharge under § 727(a)(4). The Debtor's failure to disclose over one-quarter of his income is clearly material, especially when one-quarter of his income exceeds $15,000. And the intentionality of the omission can be inferred from several pieces of evidence – the

---

[3] 11 U.S.C. § 727(a)(4).

[4] *See In re Gray*, 295 B.R. 338, 344 (Bankr. W.D. Mo. 2003).

[5] *See In re Lambert*, 280 B.R. 463, 467 (Bankr. W.D. Mo. 2002)

Debtor has earned a significant bonus every quarter since he assumed the general manager position at Jack Stack in March 2003; the Debtor and his supervisor both testified that 2004 was a banner year for Jack Stack; and the Debtor routinely reviewed operating reports allowing him to monitor Jack Stack's (and, thus, his own) performance. Taken together, these facts dispel any notion that the Debtor could not reasonably anticipate receiving postpetition a bonus attributable to his prepetition employment in 2004. He may not have known the exact amount of the bonus, but the certainty to which he expected receiving one (or more) rose to a level such that it was necessary for him to disclose that expectation. And the failure to make such a disclosure constitutes an intentional, material omission from his schedules.

Moreover, the Debtor's declaration in Exhibit B to the Separation and Property Settlement Agreement that his gross yearly income is "approximately $75,000" directly contradicts his representation in Schedule I that his yearly income is $58,500. Notably, those two contradictory documents were sworn to and filed within 90 days of each other. Based on the Debtor's demonstrated ability to state his yearly gross income as a combination of base salary and bonuses, even if the Debtor had reasonably believed that he would not receive any additional bonuses attributable to his employment in 2004, he could have disclosed that his current income was "approximately $73,905.08" – his income in 2004 as of the petition date. Yet, he chose not to do so.

In the final analysis, what is most striking to the Court here is that without engaging in a fair amount of detective work – which neither a court, trustee, nor creditor is required to do – the Debtor's true income simply cannot be ascertained from a review of his schedules.[6] Schedule I indicates that the Debtor has an income of $58,500, but that is not the case. The Debtor has significant bonus income, and it was incumbent upon him to disclose it in some fashion – by prorating it as part of his current gross monthly income or by indicating at the bottom of Schedule I that he expected significant additional income in the following year. The fact that he implicitly disclosed it in his Statement of Financial Affairs does not absolve the Debtor of his duty to specifically disclose that income on Schedule I. To the contrary, it is precisely this kind of

---

[6] The purpose behind 11 U.S.C. § 727(a)(4) is to enforce a debtor's duty of disclosure and to ensure that the debtor provides reliable information to those who have interest in the administration of the estate. *In re Tully*, 818 F.2d 106, 110 (1st Cir.1987). *See also, In re Martin*, 141 B.R. 986, 997 (Bankr. N.D. Ill.1992) ("Bankruptcy Trustees lack the time and resources to play detective and uncover all the assets and transactions of their debtors."). In this case, the Debtor's intentional understatement of his income also deprived the United States Trustee of the opportunity to consider whether to seek a dismissal of this case based on substantial abuse, and the apparent surplus of disposable income which results if the Debtor's bonus income is included in his gross monthly income would likely warrant such a dismissal. In light of the Court's holding here, the issue is largely moot, although the Debtor might have been better off if the case had been dismissed.

inconsistency which justifiably motivates a creditor or trustee to seek the denial of a debtor's discharge.

Therefore, for the foregoing reasons the Court finds that the Debtor's failure to disclose his bonus income on bankruptcy Schedule I constitutes an intentional, material omission warranting the denial of his discharge under 11 U.S.C. § 727(a)(4).

**11 U.S.C. § 727(a)(5).**

Section 727(a)(5) provides that the Court should deny a debtor's discharge if "the debtor has failed to explain satisfactorily . . . any loss of assets."[7] "Once the plaintiff demonstrates a loss of assets, the burden of proof shifts to the debtor to explain the loss. If the debtor's explanation is too vague, indefinite, or unsatisfactory then the debtor is not entitled to a discharge."[8]

In this case, the Debtor admitted that a large portion of the $11,783.32 in bonuses he received postpetition is property of the estate; therefore, he has an obligation to account for the disposition of that money with some degree of specificity. The Debtor has fallen woefully short of fulfilling that obligation. His explanations of the use of the money – for attorneys' fees and various (unspecified) expenses related to his children – were vague and unsubstantiated. He did not supply one bill that he paid with his bonus money, let alone a receipt for the payment of such a bill. And his failure to adequately document the use of the bonus money for <u>extraordinary</u> expenses is especially damning considering that his bankruptcy Schedules I and J indicate that his understated income of $58,500 exceeds his <u>ordinary</u> expenses.

Therefore, the Court finds that the Debtor has failed to adequately explain the dissipation of bankruptcy estate assets and will deny his discharge pursuant to 11 U.S.C. § 727(a)(5).

## CONCLUSION

For the reasons stated above the Court will deny the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(4) and (5). A separate order consistent with this Memorandum Opinion shall be entered pursuant to Fed. R. Bankr. P. 9021.

**ENTERED** this 14th day of September 2005.

    /s/    Jerry W. Venters
United States Bankruptcy Judge

---

[7] 11 U.S.C. § 7272(a)(5).

[8] *In re Carter*, 203 B.R. 697, 707 (Bank. W.D. Mo. 1996); *see also, In re Hartman*, 181 B.R. 410, 413 (Bankr. W.D. Mo. 1995) (stating that the debtor's intention and credibility may be irrelevant if the debtor's explanation is unsupported by sufficient documentation).

Copy of the foregoing mailed electronically or
conventionally to:
Michael Fielding
Kenneth P. Eitel, Jr.